## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT PIERCE DIVISION

JOHN LAPIKAS,

    *Plaintiff,*                                        **CASE NO.:**

v.

MARINER SANDS COUNTRY CLUB, INC.,

    *Defendant.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff John Lapikas files this Complaint and Demand for Jury Trial against Defendant Mariner Sands Country Club, Inc. (the "Club"), as follows:

## INTRODUCTION

1. Lapikas is 71 years old. He cared the Club's golf courses for more than two decades. In the Spring of 2023, the Club ended his employment solely because of his age.

2. Plaintiff seeks damages for discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and the Florida Civil Rights Act ("FCRA"), and for Defendant's defamatory statements.

## PARTIES

3. Plaintiff is a resident of Martin County, Florida. At all times material, he was an employee of Defendant.

4. Defendant is a Florida corporation with its principal address in Martin County, Florida. At all times material, Defendant was Plaintiff's employer.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under 29 U.S.C. § 623.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims because they are so closely related to his ADEA claims that they form part of the same case or controversy. 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendant because Defendant continuously conducts business within this District.

8. Venue is proper because Defendant is subject to personal jurisdiction in this District and because the acts complained of and giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

9. The Club is a private, member-owned country club that covers more than 720 acres in Stuart, Florida.

10. The Club is home to two golf courses, tennis courts, a sprawling clubhouse, and more than 750 residences.

11. Lapikas began working for the Club in 2002. Ultimately, Lapikas became the Club's Director of Agronomy. The Director of Agronomy is informally referred to as the Superintendent.

12. During his tenure, Lapikas' work ethic and dedication to the Club was beyond reproach.

13. In October 2022, Rick Orsi became the Club's new General Supervisor and CEO.

14. On approximately February 10, 2023, the Club received a report from an independent agronomist who inspected the Club's golf courses.

15. That report indicated that the Club's golf courses were in very good condition.

16. On March 10, 2023, Orsi called Lapikas and advised they needed to speak. The two met later that day. During that meeting, Orsi told Lapikas that it was time for him to retire.

17. Lapikas explained that he was not ready to retire and planned to work at the Club for several more years.

18. Lapikas previously had several conversations with the Greens' Committee about succession planning. Lapikas intended to continue working as Superintendent until age 75. Then, Lapikas would help in the hiring and onboarding of his replacement given his wealth of knowledge about the courses. And then he would retire.

19. Orsi stated that it was "too bad" that Lapikas had received such assurances because the matter already had been decided otherwise by the Executive Committee.

20. Orsi indicated that Lapikas' replacement had already been chosen: Anthony Stevens.

21. Stevens is multiple decades younger than Lapikas.

22. In connection with forcing Lapikas out, the Club took multiple steps to install Stevens as the new Superintendent.

23. The Club began referring to Stevens internally as the new Superintendent.

24. On the Club's subscription to Golf Course Industry magazine, the Club changed the mailing label to reflect Stevens as the Superintendent and Lapikas as the Assistant Superintendent.

25. Orsi and others in the Club began circulating the falsehood to Club members and vendors that Lapikas was retiring.

26. But the Club's negotiations with Stevens fell through. Stevens ultimately decided not to accept employment with the Club.

27. The Club found itself in a bind: It had forced Lapikas into retirement but been stood up by his replacement.

28. With no other options, the Club went to Lapikas and asked him to stay on until they could find a replacement.

29. At the same time, the Club sent Lapikas a draft severance agreement and gave him only three days to sign it. Realizing that deadline violated federal law, the Club walked back the three-day acceptance window.

30. The Club then launched a formal search for a new Superintendent, ultimately hiring Michael Cauley, who is approximately 30 years younger than Lapikas.

31. In addition to spreading the falsehood throughout the Club community that Lapikas retired, the Club sent out a farewell email on April 8. 2023. Although the email did not use the word retirement, it clearly implied that Lapikas was retiring and voluntarily leaving the Club.

32. After that email was sent, Club members began to call and text Lapikas to congratulate him on his retirement.

33. Lapikas had no intention of retiring or ending his career. He was still capable of performing his job at a high level and intended to remain with the Club for several more years. But because of the Club's misrepresentations, the relevant community believes that Lapikas' career is over.

## COUNT I
## VIOLATION OF ADEA (DISCRIMINATION)

34. Plaintiff repeats and realleges Paragraphs 1-33 as if fully set forth herein.

35. Defendant's conduct detailed above constitutes age discrimination in violation of the ADEA.

36. Plaintiff is over 40 and a protected employee under the ADEA.

37. Plaintiff suffered an adverse employment action when he was forced out of his job of nearly 20 years because of his age.

38. But for Plaintiff's age, Defendant would not have engaged in such conduct.

39. Defendant's conduct was willful.

40. Defendant's leadership, management, human resources, and counsel were aware of Defendant's conduct.

41. Defendant acted with malice or reckless indifference to Plaintiff's rights.

42. Defendant's management knowingly countenanced or approved of age discrimination, as exhibited by Defendant's refusal to honor Lapikas' understandings regarding retirement and failure to identify any lawful reason for his termination.

43. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages.

44. Plaintiff is entitled to damages to the fullest extent permitted by the ADEA.

## COUNT II
## VIOLATION OF FCRA (DISCRIMINATION)

45. Plaintiff repeats and realleges Paragraphs 1-33 as if fully set forth herein.

46. Plaintiff, a person above the age of 40, is a protected employee under the FCRA.

47. Plaintiff suffered an adverse employment action when he was forced out of his job of nearly 20 years simply for his age.

48. But for Plaintiff's age, Defendant would not have engaged in such conduct.

49. Defendant was alerted at every level of management as well as human resources as to what was happening to Plaintiff. And yet, Defendant continued to countenance or approve of the discrimination Plaintiff was subjected to.

50. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of age discrimination, as exhibited by Defendant's refusal to honor Lapikas' understandings regarding retirement and failure to identify any lawful reason for his termination.

51. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

52. Accordingly, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by the FCRA.

## COUNT III
### DEFAMATION

53. Plaintiff repeats and realleges Paragraphs 1-33 as if fully set forth herein.

54. Defendant, through its agents including but not limited to Orsi, repeatedly stated to Plaintiff's former colleagues, Club vendors, and Club members, as well as others that Plaintiff had chosen to retire.

55. Defendant knew that these statements were false when publishing them, or at a minimum had no reason to believe that they were true upon publication.

56. At the time the statements were made, Defendant knew or should have known that such statements would cause severe damage to Plaintiff's personal and professional business opportunities, his career, and ultimately his ability to earn a living.

57. Defendant made these statements with actual malice because it knew of their falsity or made the statements with reckless disregard for their truth or falsity.

58. In making the defamatory statements, Defendant acted intentionally, maliciously, willfully, and with the intent to injure Plaintiff.

59. Plaintiff has been harmed by the diminished economic value of (1) the goodwill he built at the Club, and (2) his reputation as a hard-working individual. Plaintiff has also suffered economic harm.

60. Defendant's conduct was unreasonable and outrageous, exceeds the bounds tolerated by decent society, and was done willfully, maliciously, and deliberately to cause Plaintiff severe harm.

61. As a result of Defendant's defamatory statements, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT IV
## **<u>DEFAMATION *PER SE*</u>**

62. Plaintiff repeats and realleges Paragraphs 1-33 as if fully set forth herein.

63. Defendant, through its agents including but not limited to Orsi, repeatedly stated to Plaintiff's former colleagues, Club vendors, and Club members, as well as others, that Plaintiff had chosen to retire.

64. Defendant knew that these statements were false when publishing them, or at a minimum had no reason to believe that they were true upon publication.

65. Defendant's statements are defamatory *per se* because even when considered alone, they tend to subject Plaintiff to distrust, ridicule, contempt and disgrace that are injurious to Plaintiff's professional reputation.

66. These statements were aimed at harming Plaintiff's fitness in his profession and moral character.

67. At the time the statements were made, Defendant knew or should have known that such statements would cause severe damage to Plaintiff's personal and professional business opportunities, his career, and ultimately his ability to earn a living.

68. Defendant made these statements with actual malice because it knew of their falsity or made the statements with reckless disregard for their truth or falsity.

69. In making the defamatory statements, Defendant acted intentionally, maliciously, willfully, and with the intent to injure Plaintiff.

70. Plaintiff has been harmed by the diminished economic value of (1) the goodwill he built at the Club, and (2) his reputation as a hard-working individual. Plaintiff has also suffered economic harm.

71. Defendant's statements wrongfully paint Plaintiff as unprofessional and unfit for employment.

72. Defendant's conduct was unreasonable and outrageous, exceeds the bounds tolerated by decent society, and was done willfully, maliciously, and deliberately to cause Plaintiff severe harm.

73. As a result of Defendant's defamatory statements, Plaintiff has been damaged in an amount to be determined at trial.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in his favor as follows:

a. Back and front pay resulting from Defendant's violations of the ADEA to the fullest extent permitted by law;

b. Liquidated damages resulting from Defendant's violations of the ADEA to the fullest extent permitted by law;

c. Back and front pay resulting from Defendant's violation of the FCRA to the fullest extent permitted by law;

d. Compensatory and punitive damages resulting from Defendant's violations of the FCRA to the fullest extent permitted by law;

e. Compensatory and punitive damages flowing from Defendant's defamation;

f. Compensatory, presumed, and punitive damages flowing from Defendant's defamation per se;

g. Pre-judgment and post-judgment interest;

h. An award of costs and reasonable attorneys' fees; and

i. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: October 20, 2023                     Respectfully submitted,

By: */s/ Christopher S. Prater*
　　　Christopher S. Prater
　　　Florida Bar No.: 105488
　　　cprater@pollardllc.com

　　　Jonathan E. Pollard
　　　Florida Bar No.: 83613
　　　jpollard@pollardllc.com

　　　Michael A. Boehringer
　　　Florida Bar No.:1018486
　　　mboehringer@pollardllc.com

　　　**Pollard PLLC**
　　　401 E. Las Olas Blvd., #1400
　　　Fort Lauderdale, FL 33301
　　　Telephone: 954-332-2380
　　　Facsimile: 866-594-5731
　　　*Attorneys for Plaintiff John Lapikas*